IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>RENAULD CLAYTON ) | )<br>)<br>NO. 3:19-cr-00132<br>JUDGE RICHARDSON<br>)<br>) |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 120).[1] Via the Motion for Compassionate Release, Defendant seeks a reduction of his 32-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a response in opposition (Doc. No. 123, "Response"),[2] arguing that the Motion should be denied because (according to the Government) Defendant has not established "extraordinary and compelling reasons for his release" and consideration of the 18 U.S.C. § 3553(a) factors counsels strongly against granting compassionate release.

BACKGROUND

On May 22, 2019, Defendant was charged in an Indictment with with twelve separate counts: four counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1, 4, 7, and 10), four counts of aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts 2, 5, 8, 11), and four

---
[1] On March 5, 2021, Defendant filed a Pro se Motion for Compassionate Release (Doc. No. 103). The Court concluded it did not have jurisdiction to consider Defendant's pro se motion because he was appealing his conviction and jurisdiction lay with the Sixth Circuit; thus, the Court denied the motion without prejudice. (Doc. No. 110). Defendant's appeal has since been voluntarily dismissed. (Doc. No. 120-1).

[2] The Response is filed under seal. A redacted version of the sealed Response is available at Docket No. 125.

counts of federal student loan fraud, in violation of 20 U.S.C. § 1097 (Counts 3, 6, 9, and 12). (Doc. No. 3). All twelve counts were based on an alleged scheme whereby Defendant intended to defraud the Department of Education and Tennessee State University, among others, to fraudulently obtain federal student-loan funds. (*Id*.).

On February 12, 2020, Defendant pled guilty to Counts 1, 2, and 3 of the Indictment pursuant to a plea agreement under Rule 11(c)(1)(B). (Doc. No. 53). On August 14, 2020, this Court sentenced Defendant to 24 months of imprisonment followed by three years of supervised release. (Doc. No. 88). Defendant has been serving his sentence at FCI Allenwood Low. According to BOP, Defendant's release date is February 27, 2023. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Mar. 8, 2022).

## LEGAL STANDARD

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[3] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the

---

[3] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
 (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–

08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[4] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*,

---

[4] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

980 F.3d at 1112.[5] The sentencing factors set forth in Section 3553(a) include:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established for—
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>   i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>   ii) [in effect at the time of sentencing]
>
>   (5) any pertinent policy statement—
>   A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
>   B) [and in effect at the time of sentencing]
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### DISCUSSION

#### A. Extraordinary and Compelling Reasons

To grant the Motion for Compassionate Release, the Court would have to determine that "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant

---

[5] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

bears the burden to persuade the Court to make such a determination. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling."). As noted above, the Court has "*full discretion* to define 'extraordinary and compelling'" in the sense that it is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 980 F.3d at 1111 (emphasis added).

In an effort to demonstrate extraordinary and compelling reasons, Defendant asserts that he suffered a severe burn while incarcerated after which he developed a Staphylococcus (Staph) infection. (Doc. No. 120 at 2-6). He also indicates that he suffers from "a variety of medical conditions" such as high blood pressure and hypertension. (*Id*. at 4). He argues that his "pre-existing medical conditions and the burn injury coupled with the increase in COVID cases amounts to extraordinary and compelling reasons to reduce his sentence." (*Id*. at 9-12).

In the Response, the Government argues that Defendant's proffered reasons do not amount to extraordinary and compelling reasons, because Defendant has received the COVID-19 vaccination. (Doc. No. 125 at 7-8).

The Court agrees with the Government that Defendant's medical profile—his two health conditions, his burn injury, and his Staph infection—even when considered in the context of the COVID-19 pandemic, does not rise to the level of extraordinary and compelling reasons, because Defendant's medical records indicate that he received two COVID-19 vaccines. (Doc. No. 123-2 at 145). The Sixth Circuit recently held that a defendant's mere access to the COVID-19 vaccine while incarcerated by itself forecloses a finding of extraordinary and compelling reasons based on a defendant's underlying health conditions. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). The court explained:

> We need not debate the medical implications of Lemons's [health] condition. For even recognizing the purported seriousness of his condition, the fact remains that, as Lemons acknowledges, the COVID-19 vaccine is available to him in prison. . . .
>
> Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19.

*Id.*; *see also United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (reaffirming *Lemons* and finding that although the defendant's medical conditions were serious, he had access to the COVID-19 vaccine, and therefore his incarceration during the COVID-19 pandemic did not present an extraordinary and compelling reason for a sentence reduction). *See also United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *3 (6th Cir. Nov. 18, 2021) (citing *Lemons* and finding that the district court abused its discretion when the district court granted compassionate release to an inmate who had been fully vaccinated).

Here, the Government has filed Defendant's BOP vaccination record, which reveals that Defendant has been fully vaccinated, and thus had access to the COVID-19 vaccine while in BOP custody.[6] (Doc. No. 123-2 at 145). Defendant received the first dose of the Moderna vaccine on October 7, 2021, and the second dose on November 3, 2021. (*Id.*). Because Defendant had access

---

[6] Although "booster" vaccines are now available, the CDC continues to consider someone "fully vaccinated" when he or she has "received their primary series of COVID-19 vaccines." *See Stay Up to Date with Your Vaccines*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fvaccines%2Ffully-vaccinated.html (last accessed Mar. 8, 2022) ("A person is considered fully vaccinated with vaccines against SARS-CoV-2 infection ≥2 weeks after receipt of the second dose in a 2-dose series (Pfizer-BioNTech and Moderna) or ≥2 weeks after receipt of a single dose of the Janssen COVID-19 Vaccine.").

to—and indeed received—the vaccine, his health conditions coupled with the COVID-19 pandemic do not amount to an "extraordinary and compelling reason" warranting a sentence reduction. *Lemons*, 15 F.4th at 751.

Moreover, the medical records belie Defendant's assertion that his high blood pressure/hypertension "is dangerously high and cannot be controlled with medication in the BOP," (Doc. No. 102 at 8), and that he is currently suffering from a Staph infection of his severe burn. His most recent medical record (on December 14, 2021) indicates that Defendant's blood pressure was "stable" and that his blood pressure is "usually very well controlled." (Doc. No. 123-2 at 5). Additionally, Defendant's medical records indicate that on November 22, 2021, "[t]he burn this inmate sustained 6 months ago was a 2nd degree superficial burn. It has since completely resolved." (*Id*. at 5). Moreover, during the December 14th medical evaluation, Defendant complained of headaches, and according to the medical provider's note, Defendant surmised the headaches were caused by dehydration from working out too often. (*Id*. at 4). Defendant's self-reported frequent workouts do not square with the picture Defendant otherwise attempts to paint of himself as someone who is suffering from grave medical conditions. Accordingly, the medical records demonstrate that Defendant's asserted medical conditions have either resolved or are being controlled through medication while in BOP custody, and thus are not a basis for finding extraordinary or compelling reasons for Defendant's release.

Therefore, the Court finds that Defendant has not met his burden to demonstrate that his medical conditions (standing alone or combined with the COVID-19 pandemic) are extraordinary and compelling reasons for his release. Thus, his Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion for Compassionate Release (Doc. No. 120) will be **DENIED**. An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE